## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KIRK E. WEBSTER,                          *
                                          *
    Plaintiff, *pro se*,                  *
                                          *
v.                                        *
                                          *     **Civ. No. 8:23-cv-1602-PJM**
LLOYD J. AUSTIN, III, et. al.,            *
                                          *
    Defendants.                         *
                                          *
                                          *

### <u>MEMORANDUM OPINION</u>

In June 2023, Kirk E. Webster filed a *pro se* Complaint against Defendants Lloyd J. Austin, III, Mark Esper, Robert D. Sharp, Jack W. Rickert, the National Geospatial-Intelligence Agency ("NGA"), and the NGA's Human Resources Office, alleging various purported violations of Webster's statutory rights as a federal employee. Shortly after filing his Complaint, Webster filed an Amended Complaint (ECF No. 14).

Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 15). Webster filed an opposition to Defendants' Motion, and Defendants replied (*see* ECF Nos. 17, 18). Webster has also filed a Motion for Leave to File Surreply (ECF No. 20), to which Defendants have filed an opposition, and as to which Webster has filed a reply (*see* ECF Nos. 21, 22). No hearing is necessary. *See* D. Md. Local R. 105.6.

For the following reasons, the Court will **GRANT IN PART** Defendants' Motion to Dismiss and will **ORDER** that this case be transferred to the United States District Court for the Eastern District of Virginia. The Court expresses no view as to the other aspects of Defendants' Motion or Webster's Motion for Leave to File Surreply.

1

## I.

For reasons that will become apparent over the course of this Opinion, "it is necessary to set forth the lengthy procedural and factual history pertinent to this case." *Webster v. Esper*, No. 1:20-cv-9, 2020 U.S. Dist. LEXIS 34766, at *2 (E.D. Va. Feb. 28, 2020), *aff'd* No. 20-1488, 2021 U.S. App. LEXIS 30045 (4th Cir. Oct. 6, 2021).[1]

## A.

Webster, a resident of Virginia, was for many years employed by the NGA. ECF No. 14-1 at 1. On November 17, 2010, he suffered from a stroke while at the NGA headquarters in Bethesda, Maryland. *See id.*

He alleges that, following his stroke, Defendants effectively conspired to preclude him from receiving any of the benefits that otherwise would have been due to him as a federal employee who suffered an on-the-job injury. *See id.* at 2. His primary claim is that he was unable to claim Federal Employees Compensation Act ("FECA") benefits—including paid medical expenses and worker's compensation—because the NGA and its agents did not disclose to him his FECA rights in the immediate aftermath of his stroke. *See id.* Webster claims that Defendants deliberately withheld information about his entitlement to FECA benefits to retaliate against him because, before his stroke, he had engaged in activities protected by Title VII of the Civil Rights Act of 1964 by filing more than 200 workplace-related complaints. *See id.*

On June 17, 2011, six months after Webster's stroke, the NGA suspended his security clearance. *See id.* at 2, 8.[2] At the time and to this day, the NGA has justified the suspension of

---

[1] The facts set forth in this Opinion are derived from Webster's Amended Complaint, materials integral to or incorporated in the Amended complaint by reference, and prior court records. *See Goines v. Valley Comm. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016). The Amended Complaint has been construed liberally, in accordance with well-established authority for a court's review of *pro se* pleadings. *See Smith v. Smith,* 589 F.3d 736, 738 (4th Cir. 2009).
[2] The Court acknowledges some discrepancy in the dates alleged in Webster's Amended Complaint and prior judicial decisions. *Compare* ECF No. 14-1 at 2, 8 (stating that the revocation of Webster's security clearance occurred in June 2011) *with Webster,* 2020 U.S. Dist. LEXIS 34766, at *2 (stating that the revocation occurred in February 2012).

Webster's security clearance on the grounds that he is financially unstable because he filed for bankruptcy. Webster claims that this reason is pretextual, and that his suspension was actually imposed in retaliation for his protected Title VII activity. *See id.* at 11; ECF No. 15-1 at 3.

Webster claims that following the suspension of his security clearance, the NGA refused to provide him Discontinued Service Retirement ("DSR") benefits which, he says, generally give federal employees "priority placement" to be hired in a new in a federal government position. *See* ECF No. 14-1 at 8. Webster says he was unable to obtain another federal job once his security clearance was revoked because the NGA declined to provide the DSR benefits. *See id.* at 8–9. He alleges that the NGA's denial of the DSR benefits once again was motivated by retaliatory animus because of his protected Title VII activity. *See id.*

In 2012, the NGA offered to provide Webster Voluntary Early Retirement Authority ("VERA") and Voluntary Separation Incentive Pay ("VSIP") benefits. *See id.* at 3; ECF No. 15-1 at 3. In exchange, the NGA asked Webster to forfeit all claims he had asserted or could have asserted against the NGA and its agents or officers. ECF No. 15-1 at 3–4. Webster—at the time represented by counsel—agreed, and the parties memorialized their understanding in a Settlement Agreement in June 2012. *See id.* at 4.

Notwithstanding the Settlement Agreement, Webster has continued to sue the NGA and certain of its officials over the years. The present case is the latest of several that he has brought concerning the same or similar facts and claims. A history of the prior litigation may be summarized as follows.

---

These discrepancies are ultimately immaterial to the Court's disposition of the present Motions and, in any event, the Court accepts the facts as pled by Webster before this Court. *See United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015).

On February 2, 2015, Webster filed an agency-level complaint alleging that the NGA discriminated against him by failing to inform him of his entitlement to DSR benefits in an act of retaliation for his prior protected Title VII activity. ECF No. 15-1 at 4. On April 24, 2015, the NGA issued a final agency decision in 2015, dismissing Webster's complaint on the grounds that his claims were barred by the Settlement Agreement. *See id.* at 5.

On October 24, 2016, Webster filed suit in the United States District Court for the District of Columbia claiming that his Settlement Agreement with the NGA was invalid because it was executed under duress. *See Webster v. Carter, et al.,* Case No. 1:16-cv-02114-CRC (D.D.C. Oct. 24, 2016). The D.C. district court ultimately transferred the case to the United States District Court for the Eastern District of Virginia. The Virginia district court dismissed all of Webster's claims on the grounds that the Settlement Agreement precluded Webster from asserting any claims related to his employment against the NGA. *See Webster v. Mattis,* Civ. A. No. 1:17-cv-01384 (TSE/IDD), 2018 U.S. Dist. LEXIS 32201, at *1-2 (E.D. Va. Feb. 27, 2018). The Fourth Circuit affirmed. *See Webster v. Mattis,* 731 Fed. App'x 214 (4th Cir. July 17, 2018) (per curiam), *cert. denied.*, 139 S. Ct. 1239 (Feb. 19, 2019).

On July 26, 2019, Webster again filed suit in the United States District Court for the District of Columbia raising the same claims as in *Webster I*, this time adding new claims of race and age discrimination and retaliation under Title VII and the Age Discrimination in Employment Act of 1967 ("ADEA"). That case was again transferred to the Eastern District of Virginia. *See Webster v. Esper*, No. 1:20-CV-9, 2020 U.S. Dist. LEXIS 34766 (E.D. Va. Feb. 28, 2020) ("*Webster II*"). The Virginia district court found that Webster's claims were precluded by the Settlement Agreement, by the doctrine of collateral estoppel, and by the rule against claim-splitting. *See id.* The Fourth Circuit affirmed. *See Webster v. Austin*, No. 20-1488, 2021 U.S. App. LEXIS 30045

(4th Cir. Oct. 6, 2021), *rehr'g en banc denied*, 2021 U.S. App. LEXIS 37601 (4th Cir. Dec. 20, 2021).

**B.**

On June 14, 2023, Webster filed another Complaint against Defendants in this Court. *See* ECF No. 1. On August 31, 2023, he filed a Motion for Default Judgment. *See* ECF No. 8. The next day, he filed a Motion to Correct Defective Service. *See* ECF No. 9. On September 19, 2023, the Court denied both of Webster's Motions because Defendants had not been properly served pursuant to Federal Rule of Civil Procedure 4. *See* ECF No. 11.

On November 29, 2023, Webster filed an Amended Complaint. *See* ECF No. 14. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment followed. *See* ECF No. 15. As indicated, Webster has filed an opposition, ECF No. 17, and Defendants have filed a reply. ECF No. 18. In addition, Webster has filed a Motion for Leave to File Surreply, ECF No. 20, to which Defendants have filed an opposition, ECF No. 21, and Webster has filed a reply, ECF No. 22.

**II.**

Although Defendants present several arguments why Webster's claims should be dismissed for failure to state a claim, the Court declines to reach those issues. That is because Defendants argue that this Court is an improper venue for Webster's claims and, therefore, his claims should either be dismissed for improper venue or transferred to the Eastern District of Virginia, where proper venue lies. *See* ECF No. 15-1 at 14-15. The Court agrees that venue in this Court is improper and that the case should be transferred to the U.S. District Court for the Eastern District of Virginia.

A party may raise a defense of improper venue in a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(3). District courts are statutorily authorized to either dismiss a complaint for improper venue or transfer the case to the proper judicial district if doing so would be "in the interest of justice." 28 U.S.C. § 1406(a); *see also id.* § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]"). Under Title VII, venue is proper: "(1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in which the employment records relevant to such practice are maintained and administered, or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." *Benton v. Eng.*, 222 F. Supp. 2d 728, 730 (D. Md. 2002).

Where a plaintiff's complaint presents mixed claims—with some arising under Title VII and others arising under different statutes—courts have generally concluded that "the interest of justice" is best served if the case is decided in its entirety in a single judicial district, and that the case should be heard wherever venue is proper for the plaintiff's Title VII claims. *See, e.g.,* *Benton*, 222 F. Supp. 2d at 731; *Lengacher v. Reno*, 75 F. Supp. 2d 515, 519 (E.D. Va. 1999).

Although his Amended Complaint is hardly a model of clarity, Webster does appear to bring at least some Title VII claims against Defendants. He explicitly invokes the statute at various points in his Amended Complaint, *see, e.g.*, ECF No. 14-1 at 18, and otherwise uses terms of art, such as "retaliation," which carry distinct, well-established meanings within the legal framework of the statute. *See* ECF No. 14-1 at 3 ("[Defendant] Rickert . . . sought to ruin my and my family's livelihood to retaliate against me for my prior EEO activity. . . "); *see also Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 832 (E.D. Va. 2016) (discussing legal framework for claims of

6

retaliation under Title VII). At the same time, Webster alleges that Defendants have deprived him of statutory rights like FECA benefits. *See* ECF No. 14-1 at 3. Although a government agency's denial of an employee's entitlement to worker's compensation under FECA is generally not analyzed in conjunction with Title VII (to the extent such decisions are reviewed by courts at all), *see, e.g., Collini v. Williamson*, No. ELH-21-0439, 2021 U.S. Dist. LEXIS 172125, at *3 (D. Md. Sep. 10, 2021), Webster alleges that Defendants deliberately failed to inform him of his entitlement to FECA benefits in order to retaliate against him for his protected Title VII activity. *See* ECF No. 14-1 at 3. That, in the Court's view, pulls Webster's FECA-based claim under Title VII's ambit. To the extent that Webster's claim with respect to his FECA benefits constitutes a separate and distinct cause of action, the Court concludes that the "interest of justice" would be best served by having the entirety of his case decided in a forum where venue is indisputably proper under Title VII. 28 U.S.C. § 1406(a); *see, e.g., Benton*, 222 F. Supp. 2d at 731; *Lengacher*, 75 F. Supp. 2d at 519.

Given this conclusion, it remains to be determined whether the District of Maryland or the Eastern District of Virginia is the proper venue for Webster's claims. Defendants argue that proper venue lies in the Eastern District of Virginia because the NGA's headquarters were moved to Springfield, Virginia in 2011; the agency's employment records are housed there; and, assuming that Webster's Title VII claims are meritorious, Webster would have continued to work out of the NGA's Virginia headquarters but for Defendants' alleged misconduct. *See* ECF No. 15-1 at 14–15. In addition, Defendants say, the Settlement Agreement about which Webster complains was negotiated and executed in Virginia. *See id.* at 15. Webster contends that venue is proper in this judicial district because Defendants failed to inform him of his entitlement to FECA benefits when he had his stroke at the NGA's headquarters in Bethesda, Maryland. *See* ECF No. 17 at 2-3.

7

The Court agrees with Defendants that Title VII's statutory venue factors weigh strongly in favor of proper venue lying in the Eastern District of Virginia, not the District of Maryland. Since 2011, the NGA's headquarters have been located in Springfield, Virginia. Accordingly, that is the judicial district in which Webster would have continued to work but for Defendants' allegedly wrongful conduct. *See* 42 U.S.C. § 2000e-5(f)(3). Indeed, Webster alleges that he worked out of the NGA's Virginia headquarters for at least one month before his security clearance was revoked. *See* ECF No. 14-1 at 2. Additionally, it is undisputed that "the employment records relevant" to Defendants' alleged misconduct "are maintained and administered" in the NGA's Virginia headquarters. 42 U.S.C. § 2000e-5(f)(3).

The only factor arguably weighing in favor of venue in this judicial district is that Webster alleges that one "unlawful employment practice" at issue—i.e., Defendants' refusal to inform him about his entitlement to FECA benefits—occurred while the NGA was still based in Bethesda, Maryland. *Id.* That factor, however, is undermined by the different instances of alleged misconduct Defendants are said to have committed. Stated differently, Webster's claims are not limited solely to Defendants' supposed failure to inform him about his FECA rights. His other claims have their own implications for venue. For example, he seeks to litigate Defendants' failure to provide him DSR benefits, which is said to have occurred in May 2012, and he claims that Defendants effectively conspired with his retained counsel to coerce him into signing the 2012 Settlement Agreement. ECF No. 14-1 at 10, 12-15. Both of those acts of alleged misconduct appear to have occurred in Virginia, not Maryland.[3]

---

[3] The Court notes as well that Webster resides in Virginia. Although a plaintiff's district of residence is not a relevant factor for purposes of Title VII's venue provisions, *see Benton*, 222 F. Supp. 2d at 731, the Eastern District of Virginia would obviously be a more convenient forum for both Webster and Defendants, because that is where all parties are primarily located. *See* 28 U.S.C. § 1404(a).

8

In sum, the Court concludes that the proper venue to resolve all the claims contained in Webster's Amended Complaint is the U.S. District Court for the Eastern District of Virginia. Because he has combined both Title VII and other statutory claims in his suit, the "interest of justice" would be best served by having the entire case litigated in Virginia. 28 U.S.C. § 1406(a); *see Benton*, 222 F. Supp. 2d at 731.[4]

### III.

Accordingly, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 15) is **GRANTED IN PART**, as to Defendants' request to transfer the case for improper venue. The Court will **ORDER** that this case be **TRANSFERRED** to the United States District Court for the Eastern District of Virginia.

The Court expresses no view on the remainder of Defendants' Motion to Dismiss or Webster's Motion for Leave to File Surreply.

A separate Order will **ISSUE**.

April 16, 2024

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[4] The Court also concludes that it is in the "interest of justice" to transfer this case to the Eastern District of Virginia because many, if not all, of Webster's claims may be precluded by the Virginia court's decisions in *Webster I* and *Webster II*. Webster should not be permitted to collaterally attack the prior decisions of the Eastern District of Virginia by filing a new suit in this Court. *See* 28 U.S.C. § 1406(a).